**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **CACI PREMIER TECHNOLOGY, INC.** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:06cv991** |
| | ) | |
| **CAROL ANNE FARACI** | ) | |
| **Respondent.** | ) | |

## ORDER

This is an appeal from an arbitration award in which respondent, Carol Ann Faraci, prevailed

in a sex discrimination claim against her former employer, petitioner, CACI Premier Technology, Inc.

("CACI"). At issue on cross-motions for summary judgment are the following questions:

(i) Whether the arbitrator manifestly disregarded the governing law in determining that all of Faraci's claims were arbitrable, whether or not she had exhausted her administrative remedies;

(ii) Whether the arbitrator manifestly disregarded the governing law in concluding that the discriminatory animus of Faraci's supervisor could be imputed to CACI's formal decisionmaker where, as here, there was evidence that the supervisor's animus infected the decision to terminate Faraci;

(iii) Whether the arbitrator manifestly disregarded the governing law in concluding that the evidence warranted a finding that Faraci was discharged because of her gender; and

(iv) Whether the arbitrator manifestly disregarded the governing law in concluding that the evidence warranted a finding of hostile work environment.

For the reasons that follow, CACI's appeal fails, as there is no sound or legal basis for disturbing the

arbitration award.

## I.

In March 2004, CACI, a corporation providing services to government and commercial

clients, with its principal place of business in Fairfax, Virginia, hired Faraci, a citizen and resident of

Massachusetts, as an Intelligence Analyst in the 66th Military Intelligence Group in Darmstadt,

1

Germany.  Faraci was employed pursuant to a written employment agreement[1] that provides:

> Any controversy or claim arising out of . . . my employment with, or the ending of my
> employment with, CACI (including any claim of discrimination . . . based on . . . gender . . .)
> will be settled first by resort to mediation by CACI's Ombudsman and then, if mediation fails
> to resolve the matter, by arbitration . . . in accordance with the American Arbitration
> Association's then-current Rules for the Resolution of Employment disputes. . . . The
> arbitrator, and only the arbitrator, will decide any and all disputes regarding whether a claim is
> arbitrable.

In July 2004, Faraci was terminated.  Believing that her termination resulted from unlawful

discrimination, Faraci filed a charge with the Equal Employment Opportunity Commission ("EEOC")

alleging discrimination based on sex and retaliation.  In particular, Faraci claimed that her supervisor,

Randall Cornelius, made unwanted sexual advances towards her and subjected her to a hostile work

environment.  Faraci alleged that because she rejected Cornelius' advances and because she was

considered a distraction to the men she worked with, Cornelius moved her to a new position for

which she was not qualified.  She alleges that this move plus her reporting of Cornelius' sexual

harassment led to her termination.  Thereafter, the EEOC terminated its processing of her complaint,

Faraci, pursuant to the arbitration agreement,  then sought mediation of her claims with CACI's

Ombudsman.  When mediation failed to resolve her claims, Faraci submitted a Demand for

Arbitration alleging "Sexual Harassment and Retaliation."

In early 2006, a hearing was held before the arbitrator.  As a preliminary matter, CACI

objected to the scope of the arbitration hearing, arguing that Faraci was limited to presenting evidence

of alleged sexual harassment by Cornelius, and not by other coworkers or clients, because these latter

claims were not exhausted before the EEOC.  The arbitrator rejected CACI's argument, finding that

Faraci's demand for arbitration satisfied the American Arbitration Association's rules.

---

[1]This agreement provides, and the parties do not contest, that disputes arising out of the
agreement are governed by Virginia law.

2

Thereafter, on July 10, 2006, the arbitrator entered an Interim Award and Opinion.  At the threshold, the arbitrator concluded that "under the arbitration agreement, the exhaustion of administrative remedies with the EEOC was not a condition precedent to binding arbitration, and indeed, [Faraci's] EEOC complaint appears to have been an unnecessary gesture, considering that she was bound to arbitrate the dispute."  She went to note that "[h]ad CACI intended [exhaustion of administrative remedies], it should have said so in the agreement."  Accordingly, the arbitrator concluded that Faraci was not limited to presenting the claims she asserted in her, as the arbitrator put it, "unnecessary complaint to the EEOC."

Then, the arbitrator's Interim Award and Opinion reached the following conclusions as to liability:

- Faraci is an extremely attractive, immature young woman assigned to work in a male-dominated workplace in a foreign country.

- Faraci did not speak German, and thus, became completely dependent on her supervisor, Randall Cornelius, for transportation and daily tasks.

- The working environment was "rife with nonprofessional atmosphere, particularly as it pertained to Ms. Faraci.  Specifically, excessive personal interactions and intensely personal conversations were permitted and tolerated . . . which contributed to mis-communications about the welcomeness of sexual behavior."

- Cornelius discussed with Faraci extremely personal matters regarding dating and sexual activity not ordinarily shared between a male supervisor and a female subordinate employee.

- There was no separation of work and private life, particularly with respect to Cornelius, who spent excessive amounts of time with Faraci, including "taking Ms. Faraci dancing at a club alone, exchanging emails and verbal descriptions about their various dating plans and dating experiences, giving dating advice to Ms. Faraci, regularly calling her after hours, discussing her finances, running [up] an 82 euro cell phone bill talking on the phone with her for at least an hour about the details of her love life, and receiving advice from Ms. Faraci as to his own love life."

- Cornelius "so intermingled work with his private life, and so permitted others . . . to do so, that he would have difficulty in differentiating welcome from un-welcome sexual advances – both his own and others' – where Ms. Faraci was concerned."

3

- Cornelius crossed the boundary into impermissible sexual harassment because of his persistent sexual advances to Faraci and his tolerance of sexual advances made by others to Faraci.

- Cornelius' sexual advances were unwelcome although Faraci may have initially been flattered by Cornelius and others.

- Cornelius "insinuat[ed] himself into every aspect of Faraci's deepest and most personal affairs on a daily basis," which had consequences in the workplace, [that] included the excessive attention by other men who sought Ms. Faraci's affection."

- The attention directed at Faraci by Cornelius and others became excessive, unwelcome, and objectively offensive.

- Cornelius' behavior, coupled with the workplace atmosphere, created a severe and pervasive hostile work environment.

- Cornelius was the top manager for the CACI work site, who reported directly to the highest ranking CACI employee in Germany.

- Cornelius violated CACI's step discipline rules and never generated any written warnings or documented any verbal warnings regarding Faraci's poor work quality.

- Faraci's termination was "handled outside of the rules, which plainly called for progressive discipline."  This, together with evidence that Cornelius and Faraci's intensely personal relationship had deteriorated, pointed persuasively to the conclusion that Faraci's termination was driven by discriminatory motives.

- When customers complained to Cornelius' superiors about Faraci, Cornelius told them Faraci "was a hopeless case, and that she should be removed immediately."

- Cornelius was involved in orchestrating the meeting at which Faraci was fired and was present for her termination.

- While Cornelius' superiors were the final decisionmakers, Cornelius had "injected himself far enough into the process so that he significantly impacted" and "poisoned" the outcome.

- CACI's customers believed Faraci was a distraction to the men at work, who would idly linger around her desk.  CACI's blind reliance on its customers' gender preference is impermissible and ignores its responsibility to ensure that neither sexual harassment nor sex discrimination played a role in Faraci's termination.

- CACI had an ineffectual "paper" sexual harassment policy.

- Faraci's termination was a tangible employment action, therefore, CACI is vicariously liable for Cornelius' actions.

4

On this basis, the arbitrator concluded that Faraci was subjected to sexual harassment in the workplace and that her termination was motivated by sex discrimination.  Accordingly, the arbitrator awarded her $64,000 in backpay, $50,000 in compensatory damages, and $31,848 in attorneys' fees.

## II.

It is well-settled that "judicial review of an arbitration award [is] substantially circumscribed." *Patten v. Signator Ins. Agency, Inc.* 441 F.3d 230, 234 (4th Cir. 2006).  Indeed, "[o]rdinarily the reviewing court's task is to enforce the bargained-for decision of the arbitrator and not to evaluate the arbitrator's factual findings or legal analysis."  *Richmond, Fredericksburg & Potomac R.R. v. Transp. Comm. Int'l Union,* 973 F.2d 276, 281 (4th Cir. 1992).  Thus, an arbitration award may be vacated only upon a showing of one of the grounds prescribed in the Federal Arbitration Act, 9 U.S.C. § 10(a),[2] or upon certain limited common law grounds, such as where an award fails to draw its essence from the contract.  *Id.*  At issue here is the fourth ground under the Federal Arbitration Act, namely whether the arbitration award should be vacated because the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4). The Fourth Circuit has held that this is done when the arbitrator's award is "in manifest disregard of the law."  *Upshur Coals Corp. v. UMW, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991).  This is, without doubt, a stringent standard.  Indeed, under this

---

[2]The Federal Arbitration Act provides that a federal court may vacate an arbitration award on the following grounds:

(1) the award was procured by corruption, fraud, or undue means;
(2) partiality or corruption in the arbitrators;
(3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner that prejudiced a party's rights; or
(4) the arbitrator exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.  *See* 9 U.S.C. § 10(a).

standard, "[a]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or legal conclusion, and may only be reversed when arbitrators understand and correctly state the law, but proceed to disregard the same." *Id.* Put differently,

> [s]o long as an arbitrator makes a good faith effort to apply the law *as [she] perceives it*, the court may not upset [her] decision simply because they are able to poke a few holes in the arbitrator's analysis. Reversal is appropriate only where the arbitrator's . . . [decision] reflects his personal notions of right and wrong.

*Richmond*, 973 F.2d at 281. Importantly, where the law is unsettled, or there is conflicting testimony which could support a decision for either of the parties, it cannot be assumed that an arbitrator manifestly disregarded the law in reaching her conclusion. *See id; see also Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). These settled legal principles provide the legal lens through which the arbitrator's award must be reviewed.

## III.

On summary judgment, CACI asserts that the arbitration award should be vacated because the arbitrator manifestly disregarded the governing law in concluding (i) that all of Faraci's claims were arbitrable, whether or not she had exhausted her administrative remedies; (ii) that the discriminatory animus of Faraci's supervisor could be imputed to CACI's formal decisionmaker where, as here, there was evidence that the supervisor's animus infected the decision to terminate Faraci; (iii) that the evidence warranted a finding that Faraci was discharged because of her gender; and (iv) that the evidence warranted a finding of hostile work environment.

## A.

With respect to the first issue, CACI contends that because Title VII's exhaustion requirement applies with equal force to arbitration, the arbitrator manifestly disregarded the law in concluding that all of Faraci's claims were arbitrable, whether or not they had been administratively exhausted. To begin with, it is well-settled that "statutory claims may be the subject of an arbitration agreement,

enforceable pursuant to the" Federal Arbitration Act. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Thus, a party may agree to arbitrate Title VII claims without forgoing the substantive rights afforded by the statute. *Id.* As such, CACI contends that exhaustion is a substantive right under Title VII, and thus a condition precedent to a viable Title VII action. Therefore, CACI argues that the arbitrator manifestly disregarded the law when she concluded that the party's arbitration agreement did not include such a condition precedent and determined that all of Faraci's claims were arbitrable.

Here, the parties correctly agree, that under the arbitration agreement any and all claims of arbitrability are solely for the arbitrator to decide. As the Supreme Court has explained, questions of "arbitrability" are those "gateway questions" that will determine whether the underlying controversy will proceed to arbitration on the merits. *Howsam v. Dean Witter Reynolds,* 573 U.S. 79, 83 (2002). Thus, arbitrability questions include whether a condition precedent to arbitration has been fulfilled, including prerequisites such as "waiver, delay, or a like defense to arbitrability" and "time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate." *Id.* (holding that the timeliness of an arbitration dispute is a gateway question for the arbitrator to decide). Thus, it was proper for the arbitrator here to decide whether Faraci fulfilled all conditions precedent to arbitration, namely whether she was required under the contract to exhaust her administrative remedies.

As such, the arbitrator's decision is reviewed to determine whether she manifestly disregarded the law. Faraci correctly points out, and an independent search has confirmed, that no authority exists squarely addressing and deciding whether Title VII's exhaustion requirement applies to an arbitration clause that does not explicitly or implicitly require exhaustion. It is worth noting, without deciding, that CACI's argument is unpersuasive. To begin with, nothing in Title VII suggests that exhaustion is required when parties contract to arbitrate their Title VII dispute. Indeed where, as here, the

arbitration clause specifically provides that the claimant must submit her claim to mediation before the claim may be arbitrated, it appears that the parties intended the contractual mediation requirement to displace Title VII's EEOC mediation procedure.[3]   Therefore, in these circumstances, where there is a complete dearth of law on the issue, the arbitrator, far from disregarding governing law, instead appears to have correctly divined the appropriate legal rule by concluding that the contract did not incorporate Title VII's exhaustion requirement.  *See Richmond*, 973 F.2d at 281-82 (noting that where an arbitrator makes a good faith effort to apply the law as she perceives it, the arbitration award should not be vacated).

**B.**

Next, CACI contends that the arbitrator manifestly disregarded binding Fourth Circuit precedent regarding employer liability when she erroneously attributed to CACI the alleged discriminatory animus of Cornelius.  CACI points out that McNeely, not Cornelius, made the ultimate decision to fire Faraci.  Thus, CACI contends that under *Hill v. Lockheed Martin Logistics Management*, 354 F.3d 277 (4th Cir. 2004)*,* Cornelius' improper motives cannot, as a matter of law, be imputed to CACI even though Cornelius may have "significantly impacted the outcome" of Faraci's termination.  In essence, CACI reads *Hill* broadly to require that only the motives of the *actual* decisionmaker be imputed to the company.

Put simply, CACI reads *Hill* too broadly.  In *Hill,* the Fourth Circuit held that under Title VII, it is not simply the improper motives of the *formal* decisionmaker that may be imputed to a company. *Hill*, 354 F.3d at 290.  Instead, a supervisor's discriminatory motivations may be imputed to an employer where the supervisor was "principally responsible" for the adverse employment action or

---

[3]This follows from the fact that Title VII's EEOC mediation requirement and the contractually required mediation before CACI's Ombudsman entail essentially similar processes designed to attain the same goal.  There is no reason to believe that the parties intended a duplication of efforts.

where the supervisor may be viewed as the "actual decisionmaker." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).  Thus, employers are liable for "individuals who may be deemed actual decisionmakers even though they are not formal decisionmakers . . . and . . . where the supervisor's reports and recommendations were merely rubber-stamped by the formal decisionmaker." *Hill*, 354 F.3d at 290.[4]  In applying this principle, the Fourth Circuit has held that one board member's discriminatory comments were attributable to the formal decisionmaker, who was present at the board meeting where the comments were made, despite the fact that the board examined multiple reports regarding plaintiff's qualifications and voted unanimously to recommend that the formal decisionmaker take the adverse employment action.  *Baqir v. Principi*, 434 F.3d 733 (4th Cir. 2006).

As *Baqir* illustrates, the law is still developing in this area and appears to be moving in the direction of imputing liability where, as the arbitrator concluded here, the supervisor's malignant participation in the decisionmaking process effectively "poisoned" the ultimate decision.  Indeed, to hold otherwise would allow company's to set up a straw decisionmaker, with no discriminatory animus, who merely accepts the recommendations of discriminatory supervisors without inquiring into their motives.  Importantly, the Fourth Circuit has recognized that companies cannot insulate themselves from Title VII liability by this ploy.  *Hill,* 354 F.3d at 291 (explaining that limiting imputation to the *formal* decisionmaker "would thwart the very purposes of the acts by allowing employers to insulate themselves from liability simply by hiding behind the approval, albeit non-biased, of formal decisionmakers").

---

[4]Significantly, the Fourth Circuit explained that "[w]hen a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision."  *Hill*, 354 F.3d at 290.

With the law still developing in this area, there is no basis for concluding that the arbitrator manifestly disregarded the law when she attributed the improper motives of Cornelius to CACI after finding that Cornelius, a "top manager" for CACI, was so "deeply intertwined in the decision to terminate Faraci" as to "poison" the decision.[5]  *See Richmond*, 973 F.2d at 281 (finding that where the law is unsettled, the arbitrator's decision will be upheld "[s]o long as an arbitrator makes a good faith effort to apply the law *as [she] perceives it*").

## C.

Next, CACI contends that the arbitrator manifestly disregarded the governing law in concluding that the evidence warranted a finding that Faraci was discharged because of her gender. To state a claim of gender discrimination, a plaintiff must demonstrate through either direct or circumstantial evidence that gender motivated, at least in part, the employer's adverse employment decision.  *Hill*, 354 F.3d at 284.  Importantly, plaintiff need not demonstrate that gender was the sole motivating factor to prevail.  *Id.*

Here, CACI claims that Faraci's gender discrimination claim fails on two grounds: (i) there was no evidence that the actual decisionmakers bore any discriminatory animus against Faraci and (ii) there was no evidence that she was terminated because customer's complained about her gender. With respect to the first ground, as discussed above, the arbitrator did not manifestly disregard the law in imputing to CACI the discriminatory animus of Cornelius.  With respect to the second ground, the arbitrator concluded that CACI's client's sought Faraci's removal from their contracts because "she was a distraction to the men at work" and "men were hanging around her, and that caused a problem

---

[5]CACI appears to challenge the arbitrator's factual findings.  In general, an arbitrator's factual findings are accorded great deference.  *Remmey*, 32 F.3d at 149. And where, as here, there is conflicting testimony which could support a decision for either of the parties, the arbitrator's ultimate decision will not be disturbed.  *Id.*

at work." Based on these findings, the arbitrator concluded that CACI's "blind reliance [on customer complaints] amounts to allowing customer preferences as to an employee's gender to become, impermissibly, an occupational qualification." Additionally, the arbitrator concluded that Cornelius' failure to abide by CACI's progressive discipline rules in terminating Faraci heightened the inference that her termination was driven by improper motives. On this record, it cannot be said that the arbitrator manifestly disregarded the law in finding that Faraci was subjected to gender discrimination in her termination.

### D.

Finally, CACI claims that the arbitrator disregarded binding precedent on proof of a hostile work environment claim. A plaintiff alleging sexual harassment bears the burden of proving that she suffered harassment that is "so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment." *Faragher*, 524 U.S. at 786 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). This alleged harassment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim, in fact, perceived as such. *Id.* at 787. Here, CACI contends that the conduct at issue here was not sufficiently severe or pervasive. In essence, CACI argues that the arbitrator erred because Faraci encouraged her male coworkers and "the Fourth Circuit has repeatedly upheld judgments for employers against allegations of conduct more offensive than that found by the arbitrator here."

This argument fails because, while there was conflicting testimony regarding Cornelius' conduct and the work environment, there was ample testimony that, if believed, would support a decision for Faraci. More specifically, the arbitrator found that Faraci was subjected to a hostile work environment because *inter alia* (i) her work site was "rife with nonprofessional atmosphere, particularly as it related to Ms. Faraci;" (ii) there were "excessive personal interactions and intensely

personal conversations [regarding dating and sexual activity] . . . which contributed to mis-communications about the welcomeness of sexual behavior;" (iii) Cornelius and Faraci discussed extremely intimate matters not ordinarily shared between supervisor and subordinate; (iv) Cornelius made persistent sexual advances to Faraci and tolerated the sexual advances made by others to Faraci; and (v) Cornelius insinuated "himself into every aspect of Faraci's deepest and most personal affairs on a daily basis."[6] Assessing whether sexual harassment is sufficiently severe or pervasive to amount to an actionable hostile work environment is a matter of judgment to "be determined only by looking at *all the circumstances*." *Harris*, 510 U.S. at 23. As the Supreme Court has recognized, hostile work environment claims are "not, and by [their] nature cannot be, [subject to] a mathematically precise test." *Id.* Thus, even if the Fourth Circuit has upheld judgment for employers against allegations of more offensive conduct, there is no reason to conclude that the arbitrator manifestly disregarded the law in concluding that, *in these circumstances*, Faraci was subjected to a hostile work environment. *See Richmond*, 973 F.2d at 28 (noting that "the court may not upset [the arbitration] decision simply because [CACI may be] able to poke a few holes in the arbitrator's analysis"). To hold otherwise would be to usurp the arbitrator's role. Accordingly, where, as here, the arbitrator made a good faith effort to apply the law the arbitration award will not be reversed. *Id.*

For these reasons, and for good cause shown,

It is hereby **ORDERED** that petitioner, CACI Premier Technology, Inc.'s motion for summary judgment is **DENIED**.

It is further **ORDERED** that respondent, Carol Anne Faraci's, motion for summary judgment is **GRANTED**.

_____

[6]Where, as here, there is conflicting testimony which could support a decision for either of the parties, the arbitrator's ultimate factual findings will not be disturbed. *See Remmey*, 32 F.3d at 149.

The Clerk is directed to send a copy of this Order to all counsel of record, to enter judgment

for respondent pursuant to Rule 58,  and to place this matter among the ended causes.


                                        ____/s/_____

Alexandria, Virginia                                T. S. Ellis, III
December 12, 2006                          United States District Judge